IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| DAVID CRAWLEY, | ) | |
| Plaintiff, | ) | Civil Action No. 7:15-cv-69 |
| | ) | |
| v. | ) | REPORT & RECOMMENDATION |
| | ) | |
| DAVID ROBINSON, et al., | ) | By: Joel C. Hoppe |
| Defendants. | ) | United States Magistrate Judge |

Plaintiff David Crawley, a state prisoner proceeding *pro se*, filed suit under 42 U.S.C. §
1983 alleging that Defendant prison officials violated his rights under the First and Fourteenth
Amendments to the United States Constitution. Am. Compl. ¶¶ 30–38, ECF No. 12. Defendants
moved for summary judgment, ECF No. 49, and Crawley responded, ECF No. 60. The motion is
before me by referral for report and recommendation under 28 U.S.C. § 636(b)(1)(B). ECF No.
35. The parties have fully briefed the matter, and it is ripe for adjudication. Having considered
the parties' pleadings, their briefs, and the applicable law, I find that there is not a genuine
dispute of material fact and Defendants are entitled to judgment as a matter of law. I therefore
recommend that the presiding District Judge **GRANT** the Motion for Summary Judgment.

I. Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord*
*Tolan v. Cotton*, --- U.S. ---, 134 S. Ct. 1861, 1866 (2014) (per curiam). Facts are material when
they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby,*
*Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists if "a reasonable jury could return a
verdict in favor of the nonmoving party." *Kolon Indus., Inc. v. E.I. DuPont de Nemours & Co.*,
748 F.3d 160, 173 (4th Cir. 2014) (citing *Anderson*, 477 U.S. at 248). "The moving party bears

1

the initial burden of demonstrating the absence of a genuine issue of material fact," *Appalachian Power Co. v. Arthur*, 39 F. Supp. 3d 790, 796 (W.D. Va. 2014), by "pointing out to the district court . . . an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party makes that showing, the nonmoving party must then produce sufficient admissible evidence to establish a specific material fact genuinely in dispute. *See* Fed. R. Civ. P. 56(c), (e); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

When deciding a summary judgment motion, the court must accept well-pled factual allegations as true and draw all reasonable inferences in the nonmoving party's favor given the materials cited, if not the record as a whole. *See* Fed. R. Civ. P. 56(c)(3); *Tolan*, 134 S. Ct. at 1866; *Scott*, 550 U.S. at 380. The court does not weigh evidence, consider credibility, or resolve disputed issues—it decides only whether the evidence reveals a genuine issue of material fact for trial. *Tolan*, 134 S. Ct. at 1866. "The court considers a *pro se* plaintiff's verified complaint as an affidavit that may defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge." *Miller v. Marsh,* No. 7:11cv180, 2012 WL 844391, at *6 (W.D. Va. Mar. 12, 2012) (citing *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir. 1991)).

## II. Procedural History and Facts

Crawley's Amended Complaint alleges violations of the First and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983. Am. Compl., ECF No. 12. Crawley names as defendants David Robinson, Chief of Corrections Operation of the Virginia Department of Corrections ("VDOC"); Gale Jones, Classification Supervisor with VDOC's Central Classification Unit; Gregory Holloway, former Warden of Wallens Ridge State Prison ("Wallens Ridge"); Leslie Fleming, former Warden of Keen Mountain Correctional Center ("Keen Mountain") and current Warden of Wallens Ridge; John Combs, Assistant

2

Warden of Wallens Ridge; and Brenda Ravizee, Institutional Ombudsman at Wallens Ridge. *Id.* ¶¶ 3–8. Crawley's allegations relate to the Steps to Achieve Reintegration ("STAR") Program, which is designed for inmates confined in segregation who, because of an unspecified fear, refuse to return to the general population of the prison. Jones Aff. ¶ 4, ECF No. 50-1; Jones Aff., Encl. A (VDOC Operating Procedure ("OP") 830.5 § IV(I)), ECF No. 50-1, at 4–19. OP 830.5 sets forth the procedure for approving transfer of a prisoner into the STAR Program. When an offender refuses to return to the general population three times, he or she should be recommended for transfer into the STAR Program located at Keen Mountain. *Id.* Following the initial recommendation, the institution conducts a formal Institutional Classification Authority ("ICA") hearing. The results of the hearing and the Offender Case Analysis, which is prepared by the institutional staff, are submitted to the VACORIS database. *Id.* The Classification Supervisor then escalates eligible offenders to the Facility Unit Head or Warden at Keen Mountain for review; the Regional Operations Chief has final review. *Id.*

On August 11, 2014, an ICA hearing was held to review Crawley's request for transfer into the STAR Program. Jones Aff. ¶ 5. On September 24, 2014, Crawley was recommended by Unit Manager Jimmy Collins for the STAR Program based on his three refusals to reenter the general population at Wallens Ridge. ECF No. 60-2, at 8. On September 29, 2014, Assistant Warden Combs and then Classification Supervisor Jones approved Crawley's ICA recommendation. *Id.*; Jones Aff. ¶ 5. On November 18, 2014, Crawley's request was marked as disapproved "pending submission," meaning that no further action was taken to escalate Crawley's case to the Warden of Keen Mountain or the Regional Operations Chief for review. Jones Aff. ¶ 6. Crawley claims that the disapproval of his case was an act of retaliation initiated by Combs in response to an earlier lawsuit Crawley had filed. Am. Compl. ¶ 30. Jones denies

3

that she was instructed by Combs or anyone else to disapprove Crawley's request. Jones Aff. ¶ 6. She states that she is unsure as to why the case was never escalated for the Warden's approval, as no rationale for the disapproval was noted on the database. *Id*. Crawley's STAR Program application was never considered by Warden Fleming at Keen Mountain or Robinson, as the Regional Operations Chief, for approval. Fleming Aff. ¶ 5, ECF No. 50-3. Warden Fleming asserts that he does not recall receiving Crawley's application. *Id*.

Crawley claims that on October 6, 2014, Combs informed him that he would not be accepted to the STAR Program because of his failure to drop a religious lawsuit he had brought earlier that year. Am. Compl. ¶ 10. He states that Combs later disclosed that because of his friendship with Warden Fleming, Combs would be able to make sure he was not accepted into the program. *Id*. at ¶¶ 11, 17. Crawley submitted declarations from other inmates who claim to have overheard these exchanges. ECF No. 60-2, at 11, 18. Crawley further claims that none of the grievances he submitted to the institutional ombudsman were processed or returned to him. Am. Compl. ¶ 12. He states that Combs admitted to interfering with his grievance procedures and that he instructed Ravizee to destroy those documents in retaliation for his past lawsuit. *Id*. at ¶ 23. Inmates in the cells adjacent to Crawley's attest that they sent Crawley's grievances from their own cells, but such grievances still were never processed or returned. ECF No. 60-2, at 12, 15; Am. Compl. ¶ 13. Combs denies any interference with Crawley's grievances or his STAR Program request. Combs Aff. ¶ 5, ECF No. 50-2. Ravizee further denies that she ever received any of Crawley's grievances and that Combs ever instructed her to destroy any offender grievances. Ravizee Aff. ¶ 7, ECF No. 50-4.

Crawley claims that he attempted to contact several other prison administrators to address the alleged retaliation, destruction of his grievances, and STAR Program admittance. Am.

Compl. ¶¶ 15–16, 24–25. He claims that Warden Holloway dismissed his concerns, telling Crawley that he "didn't care, because he was leaving [the facility]." *Id.* ¶ 15. Crawley states that he wrote several letters to Warden Fleming requesting approval of his STAR Program applications to which he received no reply. *Id.* ¶ 16. Crawley further claims that he wrote to Robinson about the discrimination and retaliation he had experienced, but received no response. *Id.* ¶ 24–25.

### III. Analysis

Crawley brings three claims. First, he alleges that Defendants violated his First Amendment rights by retaliating against him for filing a lawsuit in 2014. *Id.* ¶¶ 30–32, 38. He claims that Combs interfered with his acceptance to the STAR Program and ordered the destruction of Crawley's grievances. *Id.* ¶¶ 30, 31. He alleges that Ravizee failed to process, return, or respond to his grievances. *Id.* ¶ 32. He also alleges that Fleming, as Warden of Wallens Ridge, knowingly failed to address Combs's and Ravizee's retaliatiory actions, which prevented Crawley from utilizing the grievance process. *Id.* ¶ 38.

Second, Crawley claims that Defendants denied him access to the courts in violation of his First Amendment rights. *Id.* ¶¶ 33–34. He states that Ravizee destroyed grievances that he filed and Combs ordered destruction of his grievances, preventing him from exhausting his administrative remedies and thereby restricting his access to the courts. *Id*. ¶ 33. He also claims that Holloway and later Fleming, as Wardens of Wallens Ridge, knowingly disregarded his allegations about Combs and Ravizee and are therefore also responsible. *Id*. ¶¶ 34, 38.

Third, Crawley alleges that Defendants discriminated against him in violation of his Fourteenth Amendment right to equal protection of the law. *Id.* ¶¶ 35–37. He states that Jones intentionally disapproved his STAR Program application, despite the fact that he met the same

criteria as six other inmates who were approved for the program. *Id.* ¶ 35. He claims that by failing to evaluate his case under OP 830.5, Jones violated his right to equal protection. *Id.* He also states that because Fleming had the final approval of STAR Program applicants and failed to intervene when Jones neglected to escalate his case, he also violated Crawley's Fourteenth Amendment rights. *Id.* ¶ 36. Crawley claims that Robinson, by implementing a policy that allows prison officials to selectively discriminate when approving STAR Program applicants, violated his right to equal protection of the law. *Id.* ¶ 37.

A.    *Denial of Access to Courts*

The Constitution guarantees prisoners reasonable access to the courts in order to "attack their sentences [and] challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Harden v. Bodiford*, 442 F. App'x 893, 896 (4th Cir. 2011). This guarantee requires prisons to grant prisoners the capability to bring claims before the court, but it does not mandate any particular methodology or confer a "freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351, 356. The Supreme Court "le[ft] it to prison officials to determine how best to ensure that inmates . . . have a reasonably adequate opportunity to file nonfrivolous legal claims." *Id.* at 356. Additionally, the right of access to courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Thus, "an inmate cannot rely on conclusory allegations but must instead allege an actual injury or specific harm or prejudice that has resulted from the denial." *Harden*, 442 F. App'x at 896 (citing *Cochran v. Morris,* 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc)).

Crawley's claim that the Defendants violated his right to access the courts by thwarting his efforts to file grievances fails as a matter of law. The Constitution does not guarantee inmates access to grievance procedures or other procedures voluntarily established by a state. *Adams v. Rice*,

6

40 F.3d 72, 75 (4th Cir. 1994). Prison administrators' failure to follow a state's grievance procedure is therefore not cognizable under § 1983 as a stand-alone claim. *Barbour v. W. Reg'l Dir. VDOC*, No. 7:08cv98, 2008 WL 5062126, at *5 (W.D. Va. Nov. 26, 2008) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988), *cert. denied*, 488 U.S. 898 (1989)), *aff'd sub nom. Barbour v. W. Reg'l Dir., Va. Dep't of Corr.*, 324 F. App'x 282 (4th Cir. 2009). "Moreover, because state grievance procedures are separate and distinct from state and federal legal procedures, an officer's failure to comply with state grievance procedures does not compromise an inmate's right of access to the courts." *Id.* (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (per curiam)).

Other than alleging interference with his grievances, Crawley does not offer other evidence in support of his claim that Defendants infringed his right to access the courts. The facts he has alleged, Am. Compl. ¶¶ 33–34, 38, do not establish a legally-cognizable injury. Accordingly, I recommend that the presiding District Judge grant summary judgment for Defendants Combs, Ravizee, and Holloway on the denial of access to court claims.

## B.    *Retaliation*

A claim for retaliation under § 1983 requires an inmate to provide "specific facts to establish that (a) in response to his exercise of a constitutionally protected right, (b) the defendant took some action that (c) adversely impacted or injured him and his ability to exercise his constitutional right." *Makdessi v. Fleming*, No. 7:13cv79, 2014 WL 5384596, at *2 (W.D. Va. Sept. 22, 2014) (citing *Adams*, 40 F.3d at 74). An inmate must present more than conclusory allegations of retaliation, *Adams*, 40 F.3d at 74–75, and "[h]e must demonstrate that his exercise of his constitutional right was a 'substantial' or 'motivating' factor behind the allegedly retaliatory action," *Makdessi*, 2014 WL 5384596, at *2 (citing *Wagner v. Wheeler*, 13 F.3d 86, 90–91 (4th Cir. 1993)). The Fourth Circuit has instructed district courts to regard retaliation

claims by inmates "with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Adams*, 40 F.3d at 74.

To state a claim for retaliation, Crawley must first show that the alleged acts were committed in response to his exercise of a constitutionally protected right. *See Makdessi,* 2014 WL 5384596, at *2. Crawley claims that the officers' alleged actions were in response to the exercise of his right to file a religious lawsuit earlier that year. Am. Compl. ¶¶ 30–32, 38. The filing of a lawsuit constitutes an exercise of Crawley's First Amendment rights to petition the government and access the courts. *ACLU of Md., Inc. v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir.1993). Crawley bases his allegations of a retaliatory motive on several alleged statements from Combs himself. Am. Compl. ¶¶ 10–11. He claims that Combs explicitly stated that he and Ravizee conspired to destroy Crawley's grievances and that Combs prevented his acceptance to the STAR Program, all in response to Crawley's failure to drop his past lawsuit. *Id.* ¶¶ 10, 23. While Combs and Ravizee both deny these allegations, Combs Aff. ¶ 5; Ravizee Aff. ¶ 7, Crawley's retaliation claims fail regardless of these factual disputes because Crawley does not allege a sufficient adverse impact.

Crawley must show that the Defendants' acts in retaliation for his lawsuit either had a "chilling effect" on his right to access the courts, *Hoye v. Lt. Gilmore*, No. 7:15cv203, 2016 WL 3512275, at *3–4 (W.D. Va. June 20, 2016), or caused some other adverse impact or actual injury, *Huang v. Bd. of Governors of Univ. of N. C.,* 902 F.2d 1134, 1140 (4th Cir.1990). Crawley claims that Defendants' destruction of his grievances precluded him from "petitioning government for redress of grievances." Am. Compl. ¶¶ 30–32. Although he supports Combs's alleged retaliatory motive with declarations from other inmates, *see* ECF No. 60-2, at 11,18, he fails to connect any of the alleged retaliatory actions with an actual injury to the exercise of his rights. As discussed with regard to Crawley's denial of access claims, "the submission of internal

8

prison grievances does not constitute constitutionally-protected activity." *Reeves v. Hubbard*, No. 1:08CV721, 2011 WL 4499099, at *7 (M.D.N.C. Sept. 27, 2011) (citing *Adams*, 40 F.3d at 75). Further, Crawley fails to show that any of the alleged retaliatory acts had any adverse effect on his ability to access the courts. *Flick*, 932 F.2d at 729; *see also Makdessi*, 2014 WL 5384596, at *5 (finding that despite claims that prison guards threw away some of Makdessi's legal documents and supplies, he failed "to allege facts indicating any specific, adverse effect this conduct had on his litigation efforts in his prior case"). Thus, Crawley fails to show that the alleged retaliatory interference with his grievances caused any adverse impact or actual injury.

Crawley also claims that in response to his previous lawsuit, Combs retaliated by preventing his transfer to the STAR Program at Keen Mountain. He supports his allegation of a retaliatory motive with several accounts of statements made by Combs. Even if the Court were to assume that Crawley may not have his request for transfer from segregation to the STAR Program denied in retaliation for his filing a lawsuit, *cf. Hoye*, 2016 WL 3512275, at *4–5 (holding that transfer between prisons of the same security level would not "chill the exercise of constitutional rights of an objectively reasonable plaintiff"), he must nonetheless show that his protected activity was a "substantial" or "motivating" factor in the decision not to admit him to the STAR program. *Makdessi*, 2014 WL 5384596, at *2; *see also Pearsall v. Goins-Johnson*, No. CIV.A. GLR-13-1840, 2014 WL 3374769, at *4 (D. Md. July 8, 2014) (quoting *McDonald v. Hall*, 610 F.3d 16, 19 (1st Cir. 1979) ("Plaintiff must prove that he would not have been transferred 'but for' the alleged reason.").  As discussed more fully below, Jones provides competent and unrebutted evidence that the reason Crawley was not admitted into the STAR Program was an oversight on her part. Crawley has not provided any competent evidence that Jones harbored a retaliatory motive or even knew of Crawley's lawsuit. Thus, Crawley has not raised a genuinely disputed material fact to show that his lawsuit was a substantial or motivating

9

reason for him not being admitted to the STAR Program. I therefore recommend that the presiding District Judge grant summary judgment on the retaliation counts.

C.    *Discrimination*

The Fourteenth Amendment's Equal Protection Clause requires states to treat similarly situated individuals alike under the law. *Plyer v. Doe*, 457 U.S. 202, 216 (1982); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A state regulation or policy is presumed valid and will be sustained from challenge if the classification it makes is rationally related to a legitimate state interest. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)). Generally, if the challenged policy interferes with a fundamental constitutional right or uses a suspect classification, such as race or national origin, then it is subjected to strict scrutiny. *Id.* This review is altered for penitentiary policies because they have unique inherent needs and problems related to their penological purpose. *See id.* While the coverage of the equal protection clause extends to inmates, a court's review of an inmate's claim is "tempered by the recognition that '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* at 654 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). Therefore, a "prison regulation [that] impinges on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 84 (1987); *see Morrison*, 239 F.3d at 655. "This more deferential standard applies even when the alleged infringed constitutional right would otherwise warrant higher scrutiny, such as when an inmate claims that his constitutional right to equal protection of the laws has been violated." *Morrison*, 239 F.3d at 655 (citations omitted).

10

Because Crawley does not allege discrimination based on a suspect classification, his allegations can best be understood as a "class of one" equal protection claim. *See Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam). Such a claim lies "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* In addition, the unequal treatment must have been "'the result of intentional or purposeful discrimination.'" *Sandlands C & D LLC v. Cty. of Horry,* 737 F.3d 45, 55 (4th Cir. 2013) (quoting *Morrison,* 239 F.3d at 654).

Crawley claims to have knowledge of other inmates at Wallens Ridge who, after refusing to reenter the prison's general population three separate times as he did, were transferred into the STAR Program at Keen Mountain. Am. Compl. ¶ 11, 35. He further claims that Jones's failure to escalate his STAR Program file to Warden Fleming for approval was "deliberate and arbitrary." Pl's Br. in Opp'n 2, ECF No. 60. He provides no evidence in support of this notion. Rather, the record indicates, and Crawley does not adequately refute, that Jones's disapproval "pending submission" of Crawley's case file was a mere oversight, and not an intentional act. Jones Aff. ¶ 6. Jones explains that she approved Crawley's request, but that no further action was taken. *Id.* The VACORIS database confirms her account, as it shows the request remained before her and was disapproved "pending submission" on November 18, 2014. *Id.*; ECF No. 60-2, at 8. Jones states that no one told her to disapprove Crawley's request, nor had she spoken to anyone at Wallens Ridge or Keen Mountain about it. Jones Aff. ¶ 6. Additionally, she had no knowledge of Crawley's claims of retaliation for his prior lawsuit. *Id.* Crawley asserts that Jones's failure to escalate his request was deliberate, but he offers no facts to support this assertion or to otherwise challenge Jones's account. *See* Pl.'s Br. in Opp'n 2–3.

11

The only other support that Crawley provides for his assertion that his exclusion from the STAR Program was intentionally discriminatory comes from his account of the exchanges with Combs. Although Crawley asserts that Combs vowed to bar him from the STAR Program, primarily by asking Fleming to disapprove him, Am. Compl. ¶¶ 10, 17, the VACORIS database indicates that Combs approved Crawley for the STAR Program and that Jones was the last to review his file. Fleming never acted on Crawley's request because it was never escalated to him. Combs's alleged retaliatory statements do not address Jones's claim that her action or inaction was unintentional and an oversight.

Similarly, Crawley's discrimination claims against Fleming and Robinson are unsupported, as the undisputed record shows that Crawley's STAR Program request never even reached their desks for review. ECF No. 60-2, at 8.[1] In his brief in opposition, Crawley alleges that on January 6, 2015, he told Fleming that Jones had denied his entry into the STAR program and Fleming responded that he would look into it. Pl.'s Br. Opp'n 3; *see also* Am. Compl. ¶ 27. At the time of this interaction, Fleming was no longer the Warden at Keen Mountain, where the STAR program was housed. According to OP 830.5, after the ICA has made a recommendation, the Warden at Wallens Ridge does not have a formal role in deciding who is admitted to the STAR Program. OP 830.5 § IV(I); Jones Aff. ¶ 4. Thus, Warden Fleming's alleged failure to follow-up on Crawley's request does not show an intent to discriminate. As a result, Crawley's discrimination claim fails as a matter of law.

---

[1] Warden Fleming asserts that he would have denied Crawley entry into the STAR Program because of his disciplinary record. This may provide a legitimate reason for denying Crawley's entry, but a prisoner's disciplinary history is not set forth as criteria for admission to the STAR program. *See* OP 830.5 § IV(I). Thus, on summary judgment, the relevance of Fleming's post hoc rationale is not established.

## IV. Conclusion

Crawley has failed to demonstrate a genuine issue of material fact for any of the counts that he brings in his Amended Complaint. I find that the Defendants are entitled to judgment as a matter of law and therefore recommend that the presiding District Judge **GRANT** the Defendants' motion for summary judgment, ECF No. 49.

### **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Michael F. Urbanski, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record and unrepresented parties.

ENTER: August 1, 2016

Joel C. Hoppe
United States Magistrate Judge

13